SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
John T. Jasnoch (281605)
jjasnoch@scott-scott.com
655 North Central Ave., 17th Floor
Glendale, California 92103
Telephone: 213-985-1274
Facsimile:  213-985-1278

Francis A. Bottini, Jr. (175783)          Kip B. Shuman (145842)
fbottini@bottinilaw.com                   kip@shumanlawfirm.com
Yury A. Kolesnikov (271173)               THE SHUMAN LAW FIRM
ykolesnikov@bottinilaw.com                One Montgomery St., Suite 1800
BOTTINI & BOTTINI, INC.                   San Francisco, CA  94104
7817 Ivanhoe Avenue, Suite 102            Telephone:  303-861-3003
La Jolla, CA 92037                        Facsimile:   303-536-7849
Telephone:  858-914-2001
Facsimile:   858-914-2002

*Co-Lead Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| IN RE OSI SYSTEMS, INC. DERIVATIVE LITIGATION | Lead Case No. 14-cv-02910-MWF (MRWx) |
| This Document Relates To: | **DERIVATIVE ACTION** |
| ALL ACTIONS | **PLAINTIFFS' UNOPPOSED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Date:        January 23, 2017<br>Time:        10:00 a.m.<br>Courtroom: 5A<br>Judge:       Hon. Michael W. Fitzgerald |

**TO:   ALL PARTIES AND THEIR COUNSEL OF RECORD**

   **PLEASE TAKE NOTICE** that on January 23, 2017, or at such other date and time as ordered by the Court, in Courtroom 5A of the United States District Court for the Central District of California, located at the First Street Courthouse, 350 West First Street, Los Angeles, California  90012, Plaintiffs in the above-captioned shareholder derivative action (the "Action") will appear before the Honorable Michael W. Fitzgerald to move (the "Motion"), pursuant to Rule 23.1 of the Federal Rules of Civil Procedure and Local Rule 7 for this District, for entry of an order granting preliminary approval of the Stipulation and Agreement of Settlement (the "Stipulation")[1] entered between and among the Parties to the Action.

   This Motion seeks an order (the "Preliminary Approval Order")[2]: (a) granting preliminary approval of the settlement embodied within the Stipulation (the "Settlement"); (b) directing that notice of the Settlement (including the Fee Award Provision), be provided to current shareholders of OSI Systems, Inc., ("OSI") in substantially the form and method agreed to by the Parties and as ordered by the Court; (c) setting the deadline and procedure for current OSI shareholders to file and serve objections, if any, to the proposed Settlement in a form and manner directed by the Court; and (d) setting a date for a hearing on a motion for final approval of the Settlement (the "Settlement Hearing").

   This Motion is brought pursuant to the terms of the Stipulation, and accordingly, counsel for all Parties have conferred over a period of several months concerning the substance of this Motion pursuant to Local Rule 7-3.

---

   [1] The Stipulation is filed as Exhibit A to the Declaration of John T. Jasnoch in Support of Motion for Preliminary Approval of Settlement (the "Jasnoch Declaration"), filed contemporaneously herewith.  All capitalized terms herein, unless otherwise defined, have the same meaning as set forth in the Stipulation.

   [2] The proposed Preliminary Approval Order is both filed with the Motion and attached as Exhibit C to the Stipulation.

DATED: December 9, 2016

Respectfully submitted,

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

*/s/* John T. Jasnoch
John T. Jasnoch (CA 281605)
jjasnoch@scott-scott.com
655 North Central Ave., 17th Floor
Glendale, CA  91203
Telephone: 213-985-1274
Facsimile:  213-985-1278

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
Judith S. Scolnick
jscolnick@scott-scott.com
Donald A. Broggi
dbroggi@scott-scott.com
Thomas L. Laughlin IV
tlaughlin@scott-scott.com
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334

BOTTINI & BOTTINI, INC.
Francis A. Bottini Jr. (SBN 175783)
fbottini@bottinilaw.com
Yury A. Kolesnikov (SBN 271173)
ykolesnikov@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA  92037
Telephone: 858-914-2001
Facsimile:  858-914-2002

THE SHUMAN LAW FIRM
Kip B. Shuman (SBN 145842)
Kip@shumanlawfirm.com
1 Montgomery Street, Suite 1800
San Francisco, California  94104
Telephone: 303-861-3003
Facsimile:  303-536-7849

THE SHUMAN LAW FIRM
Rusty E. Glenn
Rusty@shumanlawfirm.com
600 17th Street, Suite 2800 South
Denver, Colorado 80202
Telephone: 303-861-3003
Facsimile:  303-536-7849

*Co-Lead Counsel for Plaintiffs*

---

3

PLAINTIFFS' UNOPPOSED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT
Case No. 14-cv-02910-MWF (MRWx)

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Marc Hagan ("Hagan") and City of Irving Supplemental Benefit Plan ("City of Irving" and, together with Hagan, "Plaintiffs"), respectfully submit this memorandum of points and authorities in support of their Unopposed Motion for Preliminary Approval of Settlement.[3]

## I.    INTRODUCTION

On November 23, 2016, Plaintiffs (including Jeffrey Kocen, the Delaware Plaintiff), Nominal Defendant OSI Systems, Inc. ("OSI" or the "Company"), and Deepak Chopra, William Ballhaus, David Feinberg, Steven Good, Meyer Luskin, Ajay Mehra, and Alan Edrick (the "Individual Defendants" and, together with OSI, "Defendants") entered into a settlement (the "Settlement") of the above-captioned derivative action (the "Action"), as reflected in the Stipulation.  Plaintiffs now seek entry of the [Proposed] Order Preliminarily Approving Settlement, Directing Issuance of Notice, and Setting a Final Settlement Hearing (the "Preliminary Approval Order"), which: (1) grants preliminary approval of the Settlement; (2) approves the form and manner of giving notice of the Settlement; (3) schedules a hearing (the "Settlement Hearing") at which the Court will consider granting final approval of the Settlement; and (4) preliminarily enjoins the Releasing Parties from commencing, instituting, or prosecuting any of the Released Claims.  *See* Stipulation Exh. B.  Co-Lead Counsel has conferred with counsel for the Defendants, and Defendants support entry of the Preliminary Approval Order.

## II.    BACKGROUND OF THE LITIGATION AND THE SETTLEMENT

This is a shareholder derivative lawsuit against the members of OSI's Board of

---

[3] The Stipulation of Settlement is filed as Exhibit A to the Declaration of John T. Jasnoch in Support of Motion for Preliminary Approval of Settlement (the "Jasnoch Declaration"), filed contemporaneously herewith.  All capitalized terms herein, unless otherwise defined, have the same meaning as set forth in the Stipulation.

Directors (the "Board"), alleging that the Individual Defendants breached their fiduciary duties as directors and/or officers of OSI by causing the Company to disseminate false and misleading statements to investors and the U.S. Government in violation of the federal securities laws and regulatory requirements governing private company contracts with government agencies.   OSI's core business segment is Rapiscan Systems, Inc. ("Rapiscan"), a developer and manufacturer of x-ray security systems used primarily in airports.   The Company's largest customers are the Department of Homeland Security ("DHS") and the Transportation Security Administration ("TSA").

The gravamen of the shareholder derivative actions on behalf of OSI is that the Individual Defendants violated federal regulations, government contracts, and their fiduciary duties by failing to implement adequate internal controls.   Specifically, the Individual Defendants caused OSI to conceal defects in its software for body scanners and use unapproved components manufactured in China in its baggage screening devices in violation of government contracts and regulations.   As a result of these issues, DHS issued a Notice of Debarment to the Company on May 20, 2013. Subsequently, OSI and DHS entered into a 30-month Administrative Agreement relating to the issues described in the Notice of Debarment.   OSI's practices also gave rise to a securities fraud class action lawsuit, *Roberti v. OSI Systems, Inc.*, Case No. 13-cv-09174-MWF.   The Action asserts claims for, among other things, breach of fiduciary duty and unjust enrichment under Delaware law.

### A.    Procedural History

On April 15, 2014, Plaintiff Hagan commenced the first shareholder derivative action on behalf of OSI and against the Individual Defendants.   The Hagan action asserted three claims:   (1) breach of fiduciary duties for disseminating false and misleading information; (2) breach of fiduciary duties for failing to maintain adequate internal controls; and (3) unjust enrichment.

On December 29, 2014, the City of Irving commenced the second shareholder derivative action on behalf of OSI.  City of Irving's complaint followed a shareholder demand for books and records pursuant to 8 Del. C. §220 that was made on February 11, 2014.  On February 26, 2015, following the denial of OSI's motion to dismiss in the related securities fraud class action, the Court granted the California Plaintiffs' motion to consolidate the two derivative actions, appointed Hagan and City of Irving as Co-Lead Plaintiffs, and appointed Scott+Scott, Attorneys at Law, LLP, Bottini & Bottini, Inc., and The Shuman Law Firm as Co-Lead Counsel.  The California Plaintiffs filed a consolidated complaint on August 25, 2015.

On July 20, 2015, Kocen commenced the third shareholder derivative action on behalf of OSI in the Delaware Chancery Court.  Kocen's complaint followed a shareholder demand for books and records under 8 Del. C. §220 that was made on January 31, 2014 and asserted two claims against the Individual Defendants for breach of fiduciary duty.

On February 10, 2016, Defendants filed a comprehensive motion to dismiss and in the alternative a motion to stay the California Action and a motion to dismiss the Delaware Action.  The California Plaintiffs filed a detailed opposition on March 11, 2016, and Defendants filed their reply on April 1, 2016.  The Delaware Plaintiff filed his opposition on April 4, 2016, and Defendants filed their reply on May 3, 2016.

**B.    Settlement Negotiations**

The parties have engaged in extensive negotiations to resolve this Action. Beginning in June of 2015, the parties began discussions relating to a possible settlement through mediation and ultimately agreed to participate in a formal mediation session with the Honorable Layn R. Phillips (Ret.) ("Judge Phillips").

In September 2015, prior to mediation, Plaintiffs retained a corporate governance expert, Professor Daniel Morrissey of Gonzaga University School of Law ("Professor Morrissey"), to review the allegations in the complaint and provide

PLAINTIFFS' UNOPPOSED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 14-cv-02910-MWF (MRWx)

recommendations on potential governance reforms that would benefit OSI and its shareholders.  In consultation with Professor Morrissey, Plaintiffs drafted sets of settlement demands which included comprehensive governance reforms designed to remedy the breach of fiduciary duties and internal control issues at OSI.  Plaintiffs' counsel also engaged in telephonic discussions and exchanged several more written proposals with counsel for OSI and the Individual Defendants.

On March 18, 2016, while Defendants' motion to dismiss and/or stay was pending, and after several exchanges of settlement proposals, the parties conducted an in-person, day-long mediation with Judge Phillips.  At the mediation, the Parties reached agreement on a number of terms for corporate governance reforms, but no final settlement was reached.  Working with Judge Phillips, the Parties continued their negotiations in the succeeding months and reached agreement on other material terms for the corporate governance reforms.  On July 7, 2016, the Parties executed a term sheet for Settlement of the Derivative Actions.  Plaintiffs notified the Court of the pendency of the Settlement on July 8, 2016.  At the time the term sheet was executed, the Settling Parties had not discussed the amount of attorneys' fees to be paid to Plaintiffs' Counsel for the benefits conferred upon OSI through the Settlement.  The Parties commenced discussion regarding the payment and amount of Plaintiffs' attorneys' fees only after the negotiations on corporate governance therapeutics was concluded.  In addition, all conversations concerning Plaintiffs' attorneys' fees and expenses occurred through Judge Phillips' office.

### C.   Major Terms of the Proposed Settlement

The proposed Settlement required OSI to significantly update and improve its corporate governance by implementing the corporate governance terms set forth in Exhibit A to the Stipulation of Settlement.  The corporate governance terms of the settlement require OSI to, *inter alia*: (i) appoint a new independent director, with compliance-related experience in a highly regulated industry, by its next shareholder

meeting, set to take place in December 2016; (ii) appoint a "Lead Independent Director" position to the board of directors; (iii) strengthen review and training in corporate governance policies for the CEO, CFO, General Counsel, Vice President of Compliance and all directors; (iv) enhance oversight of the Company's compliance function; (v) revise the clawback and insider-trading policies; (vi) approve a Technology Committee Charter; (vii) amend its compensation policies and Compensation Committee Charter to include compliance as a factor in determining incentive compensation; and (viii) amend the Audit Committee Charter to require quarterly reports from the Vice President of Compliance on the adequacy and funding of OSI's compliance program.  Also, as part of the Settlement, Co-Lead Counsel would be entitled to seek a Fee and Expense Award in an amount up to $1.6 million and an incentive award for Plaintiffs of $5,000 each, which shall be paid from the Fee and Expense Award.

Corporate governance measures like the ones achieved through the Settlement have formed the basis of settlements of countless stockholder derivative actions, as courts recognize that strong corporate governance is fundamental to a corporation's well-being and success.  Indeed, "[c]ourts have recognized that corporate governance reforms such as those achieved here provide valuable benefits to public companies." *In re NVIDIA Corp. Deriv. Litig.*, No. C-06-06110-SBA (JBS), 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008); *accord In re Rambus Inc. Deriv. Litig.*, No. C-06-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) (recognizing that the "substantial benefits" of the derivative settlement which "provides long term remedial measures that are specifically designed to protect the shareholders.").

## III.    THE    PROPOSED    SETTLEMENT    MERITS    PRELIMINARY APPROVAL

The Settlement creates significant, material benefits for OSI and is the result of intense, arm's-length negotiations by experienced counsel.  As a result of the filing, prosecution, and settlement of the Action, Defendants have agreed to implement

8

1    meaningful corporate governance reforms designed to prevent the misconduct alleged
2    in the Complaint.  Accordingly, Plaintiffs respectfully submit that the Settlement is
3    fair, reasonable, adequate, and should be preliminarily approved by the Court.

4         It is well settled that "[c]ompromises of disputed claims are favored by the
5    courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *Officers for Justice v.*
6    *Civil Serv. Comm'n. of San Francisco*, 688 F.2d 615, 635 (9th Cir. 1982) (recognizing
7    that the "settlement process [is] favored in the law"); *United States v. McInnes*, 556
8    F.2d 436, 441 (9th Cir. 1977) (explaining that "there is an overriding public interest in
9    settling and quieting litigation").  This is particularly true with respect to shareholder
10   derivative litigation, "because such litigation is 'notoriously difficult and
11   unpredictable.'" *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983).[4]  *See also*
12   *In re AOL Time Warner S'holder Deriv. Litig.*, No. 02 Civ. 6302(SWK), 2006 WL
13   2572114, at *3 (S.D.N.Y. Sept. 6, 2006) (recognizing that public policy favors
14   settlement of shareholder derivative litigation); *Cohn v. Nelson*, 375 F. Supp. 2d 844,
15   852 (E.D. Mo. 2005) (settlement of shareholder derivative suits is "particularly
16   favored").

17        **A.    The Process and Standards Governing Preliminary Approval**

18        Federal Rule of Civil Procedure 23.1(c) provides that "[a] derivative action may
19   be settled, voluntarily dismissed, or compromised only with the court's approval."  In
20   addition, Rule 23.1(c) mandates that "[n]otice of a proposed settlement . . . must be
21   given to shareholders or members in the manner that the court orders."  This generally
22   involves a two-step process.  "[U]nder Ninth Circuit precedent, [the] Court must grant
23   preliminary approval of a settlement, including approval of the notice to shareholders
24   and the proposed method of notice, before having the final settlement hearing."
25   *NVIDIA*, 2008 WL 5382544, at *2; *In re MRV Commc'ns, Inc. Deriv. Litig.*, No. CV

26   _____

27   [4]    Unless otherwise noted, internal citations are omitted and emphasis is added.

28
                                              9

08-03800 GAF (MANx), 2013 WL 2897874, at *2 (C.D. Cal. June 6, 2013) ("[A]pproval of a derivative action appears to be a two-step process, similar to that employed for approving class action settlements, in which the Court first determines whether a proposed settlement deserves preliminary approval and then, after notice of the settlement is provided to class members, determines whether final approval is warranted."); *True v. Am. Honda Motor Co., Inc.*, 2009 WL 838284, at *3 (C.D. Cal. Mar. 25, 2009) (citing *Manual for Complex Litigation*, §21.632 (4th ed. 2004) ("*Manual*"));  *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974) (preliminary approval and notice in a derivative action is designed to "fairly apprise" the company's shareholders "of the terms of the proposed settlement and of the options that are open to them").

At this time, the Court need only ***preliminarily*** approve the Settlement by "conduct[ing] a cursory review of the terms of the parties' settlement for the purpose of resolving any glaring deficiencies" before authorizing the dissemination of notice of the settlement.  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (granting preliminary approval of a proposed class action settlement).  At the preliminary approval stage the Court's review of the proposed Settlement is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625; *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

This is a low threshold, requiring the Court to determine only "whether a proposed settlement is '***within the range of possible approval'*** and that notice should be sent to class members."  *True*, 2009 WL 838284, at *3; *see also Manual* at §13.14 ("First, the [court] reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing.  If so, the final decision on approval

is made after the hearing.").[5]   A finding that a proposed settlement deserves preliminary approval is merely "the ground work for a future fairness hearing." *Alberto*, 252 F.R.D. at 659 (citing *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)).

As demonstrated below, application of the relevant factors dictates that preliminary approval of the proposed Settlement should be granted.

### B.   The Settlement Satisfies the Standards for Preliminary Approval

The Settlement should be preliminarily approved because it provides substantial benefits to OSI and its shareholders, is designed to prevent the "corporate trauma" alleged in the Complaint, was negotiated at arm's length, informed by substantial investigation, and appropriately balances the risks of litigation against the benefits of Settlement.  Accordingly, the Settlement falls within the range of possible approval.

### 1.   Great Weight Should Be Attributed to the Settling Parties' Belief that the Settlement Is Fair and Reasonable

The Settlement meets the standards for preliminary approval.  As a threshold matter, the Settling Parties and their respective counsel believe that the proposed Settlement before the Court represents a fair, reasonable, beneficial, and practical resolution of highly uncertain litigation, and that its terms fairly account for the risks and potential rewards of the claims being settled.  Stipulation at 6-8.  As the Ninth Circuit has recognized, significant weight should be attributed to the parties' belief that the litigation should be settled on the proposed terms, since "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 WL 226321, at *2 (C.D. Cal.

---

[5] *See also Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (purpose of preliminary approval is "to ascertain whether there is *any reason* to notify the class members of the proposed settlement and to proceed with a fairness hearing").

June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement).

Here, Plaintiffs and Plaintiffs' Counsel have engaged in extensive investigation, document discovery, and other litigation efforts throughout the prosecution of the Action, including, among other things: (i) reviewing OSI's press releases, public statements, U.S. Securities and Exchange Commission ("SEC") filings, and securities analysts' reports and advisories about the Company; (ii) reviewing media reports about the Company; (iii) researching the applicable law with respect to the claims alleged in the Actions and the potential defenses thereto; (iv) preparing and filing multiple derivative complaints; (v) conducting extensive damages analyses; (vi) participating in informal conferences with Defendants' Counsel regarding the specific facts of the cases, the perceived strengths and weaknesses of the cases, and other issues in an effort to facilitate negotiations and fact gathering; (vii) reviewing and analyzing hundreds of pages of  documents relating to the claims produced by OSI in response to shareholder inspection demands; (viii) participating in a day-long mediation and several follow-up conferences; and (ix) negotiating this Settlement with Defendants.  Stipulation at 6-7.   In addition to documents Plaintiffs obtained from the 8 Del. C. §220 shareholder inspection demand, the Defendants also provided Plaintiffs with over one thousand pages of internal Company documents that thoroughly described the Company's existing compliance structure, as well as reviews from an independent third party retained by OSI under the Administrative Agreement to assist OSI in enhancing its compliance profile.  The accumulation of the information discovered through the above efforts enabled Plaintiffs and Plaintiffs' Counsel to be well informed about the strengths and weaknesses of the cases and to engage in effective settlement discussions with Defendants.  *Id.*

While Plaintiffs believe that the claims alleged in the Action are meritorious, continued litigation of the Action would be extremely complex, costly, and of substantial duration.  Stipulation at Section II.  Plaintiffs' Counsel have also taken into account the uncertain outcome and the risk of any litigation, especially in complex cases such as the Action, as well as the difficulties and delays inherent in such litigation.  Plaintiffs' Counsel are also mindful of the inherent problems of the possible defenses to the claims and the requirement of establishing demand futility. *Id*.  The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery for OSI after years of additional litigation, while ensuring that the Company and its shareholders obtain immediate benefits. *Id*.

> **2.    The Proposed Settlement Was Reached Through Arm's-Length Negotiations with the Assistance of a Mediator and Falls Well Within an Appropriate Range for Possible Final Approval**

Where "the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex . . . litigation, the Settlement will enjoy a presumption of fairness."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000).  The settlement negotiations in this case have been fair, honest, and at arm's length.  The Settlement was only reached after extensive arm's-length negotiations between counsel for the Parties.  The negotiations included Plaintiffs sending Defendants a detailed set of settlement demands and counter-demands, a mediation session and continued assistance from the Hon. Layn Phillips (Ret.), a well-respected mediator who is well versed in the field of complex litigation, especially shareholder derivative litigation.  This factor thus weighs in favor of preliminary approval of the proposed Settlement.  *See, e.g.*, *NVIDIA*, 2008 WL 5382544, at *3 (derivative settlement preliminarily approved where the settlement "appears to be the result of good faith

PLAINTIFFS' UNOPPOSED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 14-cv-02910-MWF (MRWx)

1    arm's-length bargaining."); *see also In re Atmel Corp. Deriv. Litig.*, No. C 06-4592

2    JF(HRL), 2010 WL 9525643, at *13 (N.D. Cal. Mar. 31, 2010) (noting that "Judge

3    Phillips' participation weighs considerably against any inference of a collusive

4    settlement.").

5        As noted *supra*, the Settling Parties engaged in settlement discussions after they

6    thoroughly evaluated the risks of continued litigation and had sufficient information to

7    support the decision regarding the fairness, adequacy, and reasonableness of the

8    Settlement.   Counsel for all Parties were thus fully apprised of the strengths and

9    weaknesses of the case when the Settlement was reached.   The arm's-length

10   negotiations were also conducted by experienced counsel from different firms that

11   each have extensive experience in shareholder derivative litigation.  This fact militates

12   in favor of preliminarily approving the Settlement.  *See, e.g.*, *Nat'l Rural Telecomms.*

13   *Coop.*, 221 F.R.D. at 528 ("'Great weight' is accorded to the recommendation of

14   counsel, who are most closely acquainted with the facts of the underlying litigation.");

15   *Atmel*, 2010 WL 9525643, at *13 ("the involvement of multiple counsel from different

16   firms suggests a lack of collusion.").

17       As set forth in the Stipulation, the Parties did not begin negotiating the amount

18   of fees and expenses payable to Plaintiffs' Co-Lead Counsel until after all the

19   substantive terms of the Settlement were agreed upon. [6] This factor further

20   demonstrates the fairness of the arm's-length Settlement.

21   _____

22   [6] While the Court need not address fees until final approval, it bears mention that arm's-
     length fee negotiations receive similar deference. *See Hensley v. Eckerhart*, 461 U.S. 424, 437

23   (1983) ("Ideally, of course, litigants will settle the amount of a fee."); *Smiley v. Sincoff*, 958 F.2d
     498, 501 (2d. Cir. 1992) (same); *Ingram v. Coca-Cola Co*., 200 F.R.D. 685, 695 (N.D. Ga. 2001)

24   (courts give "substantial weight to a negotiated fee amount" where no evidence of collusion);.
     Even greater deference is warranted in derivative actions, where the corporate beneficiary

25   negotiates the fee amount with the help of experienced counsel. *See generally Rambus*, 2009
     WL 166689, at *3-4 (""Following *Mills*, courts consistently have approved attorneys' fees and

26   expenses in shareholder actions where the plaintiffs' efforts resulted in significant corporate
     governance reforms.…") (awarding $2 million fee where "the corporate governance reforms are

27   of significant value to [the company]").

28

3.   **The Settlement Confers a Substantial Benefit on OSI and Easily Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation**

"The principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *Atmel*, 2010 WL 9525643, at *12.  Corporate governance measures such as those achieved here provide valuable benefits to public companies.  *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395-96 (1970) ("[A] corporation may receive a 'substantial benefit' from a [stockholders' action], justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature," because "corporate therapeutics . . . furnish a benefit to all shareholders by providing an important means of enforcement of [a corporation's director and officer obligations]."); *see also NVIDIA*, 2008 WL 5382544, at *3; *Rambus*, 2009 WL 166689, at *3; *In r Hewlett-Packard Co. S'holder Deriv. Litig.*, No. 3:12-cv-06003-CRB, 2015 WL 1153864, at *5 (N.D. Cal. Mar. 13, 2015); *MRV Commc'ns*, 2013 WL 2897874, at *4.  As a direct result of the litigation of the Actions, resulting in the Settlement, OSI has agreed to adopt and implement the Governance Measures.  OSI's Board of Directors has approved the Settlement, in which OSI acknowledges that the Governance Measures "confer a substantial and material benefit to OSO and Current OSI Shareholders."  Stipulation at Section 2.2.  Moreover, the materiality of these benefits has been confirmed by Professor Daniel Morrissey, Plaintiffs' corporate governance expert.  In his detailed declaration, submitted herewith (Exh. B to Jasnoch Decl.), Professor Morrissey explains the substantial nature of the Governance Measures, how they have been carefully drafted to directly address the specific wrongdoing alleged in the Action, how the Governance Measures substantially reduce the risk that the wrongdoing which occurred here (misrepresentations to Government agencies, OSI's principal clients)  would occur again, and how the Governance Measures will substantially improve the corporate

15

governance at OSI and lead to an improved market capitalization and other benefits to OSI and its shareholders. *See* Declaration of Daniel Morrissey in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, ¶¶30-51; 69-71. As a result of these substantial and material benefits, the Settlement is an outstanding resolution for OSI of a case of substantial complexity and cost and it positions OSI and its shareholders to reap the long-term benefits of strong corporate governance.

In addition, the fact that the governance reforms provided by the Settlement directly target the organizational and corporate compliance failures alleged in Plaintiffs' Complaint strongly militates in favor of preliminary approval. *See Sved v. Chadwick*, 783 F. Supp. 2d 851, 864 (N.D. Tex.2009) (approving derivative litigation settlement because it "offers tangible, long-term remedial measures that are specifically designed to avoid the alleged missteps in [the company's] past and protect shareholders as the company moves forward"); *Mohammed v. Ells,* No. 12-cv-1831-WJM-MEH, 2014 WL 4212687, at *3 (D. Colo. Aug. 26, 2014) (finding settlement fair and adequate and stating: "The fact that the settlement involves only corporate governance reforms (in addition to payment of attorneys' fees) does not weigh against approval of the settlement.  To the contrary, the corporate governance reforms provided for as part of the settlement are specifically and appropriately designed to prevent the recurrence of the alleged misconduct that formed the basis for this action.").

## C.  The Settlement Appropriately Weighs the Benefits Conferred Upon OSI with the Significant Risks of Continued Litigation

Although it is not the role of the Court at this stage of the litigation to evaluate the merits of the Settlement, it is clear that there exist serious questions of law and fact that could negatively impact this case if it were litigated through to judgment and appeal.  The uncertainties and vagaries of further litigation of the Action demonstrate that the proposed Settlement is within the range of approval, and that Plaintiffs'

motion should be granted. Although Plaintiffs believe that their claims were meritorious, they recognize significant risks in continuing to prosecute the Action. For example, even if Defendants' pending motions to dismiss were denied, liability was by no means a foregone conclusion. Continued litigation would be extremely complex, costly, and lengthy. Document discovery would need to be completed, depositions would need to be taken, experts would need to be designated, and expert discovery conducted. Defendants' expected motions for summary judgment would have to be briefed and argued and a trial would have to be held. Even if liability were established at trial, the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation. *See, e.g.*, *NVIDIA*, 2008 WL 5382544, at *3-4 (preliminarily approving the derivative settlement after balancing the risks faced by plaintiffs and defendants).

Considering the difficulty and unpredictability of a lengthy and complex trial – where witnesses could suddenly become unavailable or the fact finder could react to the evidence in unforeseen ways –the benefits of the Settlement become all the more apparent. It is also clear that even a victory at trial is no guarantee that the judgment would ultimately be sustained on appeal or by the trial court in post-trial motions. The proposed Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several more years of litigation, while providing OSI with substantial benefits immediately. *See, e.g.*, *Maher*, 714 F.2d at 466 (derivative settlement approved where "the parties' conclusion, that any possible benefit to Zapata from pursuing the remaining causes of action could be more than offset by the additional cost of litigation, [wa]s based on an intelligent and prudent evaluation of their case").

## IV.    THE PROPOSED NOTICE TO OSI SHAREHOLDERS IS ADEQUATE

Federal Rule of Civil Procedure 23.1(c) provides that "[n]otice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or

17

members in the manner that the court orders."  The purpose of providing shareholders notice of a proposed settlement is to "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Villanueva v. Morpho Detection, Inc.,* No. 13-cv-05390-HSG, 2015 WL 4760464, at *7 (N.D. Cal. Aug. 12, 2015).

In accordance with these requirements, Plaintiffs respectfully request that the Court approve the form and content of the Notice of Proposed Settlement of Derivative Action, Final Settlement Hearing, and Right to Appear ("Notice") (Stipulation, Exh. B-1) and Summary Notice (Stipulation, Exh. B-2) as well as the method of notice dissemination to shareholders.  With respect to form and content, the proposed Notice includes information about the nature and history of this action, Plaintiffs' claims, the Parties' reasons for the proposed Settlement, and the essential terms of the proposed Settlement.  It also includes information regarding the $1.6 million Fee and Expense Award Co-Lead Counsel will seek in connection with the Settlement.  It sets forth the procedure for objecting to the proposed Settlement, and provides the date, time, and place of the Settlement Hearing.  The Notice also provides contact information for the Parties' counsel, and informs shareholders as to how they may obtain additional information.  OSI's shareholders are advised that if they fail to comply with the procedures and deadlines for filing objections, they will lose any opportunity to object to any aspect of the proposed Settlement, as well as the right to be heard.  The Summary Notice contains much of the same material, as well as instructions on how shareholders may obtain additional information, including internet access to the Stipulation and Notice.

Regarding the manner of notice, the Stipulation provides that OSI shall: (1) cause the Summary Notice to be published twice in the national edition of *Investors' Business Daily*; (2) post the Notice and the Stipulation on OSI's Investor Relations webpage, which shall be maintained through the date of the Settlement Hearing; and

18

(3) include a statement in each quarterly report (10-Q) filed with the SEC beginning on the date the Court grants preliminary approval through the date the Settlement becomes final, explaining that the Action has settled and received preliminary approval and directing stockholders to the Company's website for additional information, including the Notice and Stipulation.  In addition, Co-Lead Counsel shall cause the Notice to be posted on their respective websites.  This is a robust notice program consistent with notice programs previously approved.  *See In re MRV,* 2013 WL 2897874, at *1. *See also Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) (notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").  Indeed, courts have approved notice programs consisting of only one or two of the components of the proffered notice program here.  For example, both notice solely by publication, as well as notice by publication plus posting of settlement-related documents on a company's website, has been held to satisfy due process standards in shareholder derivative action settlements. *Arace v. Thompson*, No. 08 Civ. 7905(DC), 2011 WL 3627716, at *4 (S.D.N.Y. Aug. 17, 2011); *In re PMC–Sierra, Inc. Deriv. Litig.*, No. 06-cv-05330, 2010 U.S. Dist. LEXIS 5818, at *4 (N.D. Cal. Jan. 26, 2010) (providing for notice of proposed derivative settlement by publication in *Investor's Business Daily* and on company's website).[7]

---

[7] *See, e.g.*, *In re Activision, Inc. S'holder Deriv. Litig.*, Case No. 2:06-cv-04771-MRP-JTL, slip op. (C.D. Cal. May 13, 2008) (publication of the notice on company website and in public securities filing meets the requirements of Federal Rule of Civil Procedure 23.1 and due process), attached to Jasnoch Decl. as Exhibit C.  *In re KLA-Tencor Corp., S'holder Deriv. Litig.*, Case No. 5:06-cv-03445-JW, slip op. (N.D. Cal. Mar. 25, 2010) (same), attached to Jasnoch Decl. as Exhibit D; *In re Ditech Networks, Inc. Deriv. Litig.*, Case No. 5:06-cv-05157-JF, slip op. (N.D. Cal. Oct. 23, 2009) (same), attached to Jasnoch Decl. as Exhibit E; *In re Blue Coat Sys., Inc. Deriv.Litig.*, Case No. 06-cv-04809-JF-RS, slip op. (N.D. Cal. Nov. 12, 2010) (same), attached to Jasnoch Decl. as Exhibit F.

PLAINTIFFS' UNOPPOSED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 14-cv-02910-MWF (MRWx)

Since the form of the Summary Notice and Notice, as well as the manner of dissemination, fulfill the requirements of due process and Rule 23.1, Plaintiffs respectfully request that the Court approve the proposed plan of notice.

## V.   PROPOSED SCHEDULE FOR FINAL APPROVAL

Plaintiffs request that the Court: (i) grant preliminary approval of the Settlement; (ii) approve, as to form and content, the Notice and Summary Notice, annexed as Exhibits B-2 and B-2 to the Stipulation; (iii) find that the Notice complies with due process and shall constitute due and sufficient notice for all purposes to Current OSI Shareholders; and (iv) set a date for the Settlement Hearing. Plaintiffs, with consent of all Parties, propose the following schedule:

| | |
|---|---|
| Summary Notice issued twice in national edition of *Investor's Business Daily* | Within 20 business days after entry of the Preliminary Approval Order |
| Posting of Notice on OSI's website | Within 20 business days after entry of the Preliminary Approval Order |
| Filing of all papers in support of Settlement, including the Fee Award | 28 calendar days prior to the Settlement Hearing |
| Last Day for Current OSI Shareholders to comment on the Settlement | 14 calendar days prior to the Settlement Hearing |
| Filing of all reply papers in support of the Settlement, including responses to objections, if any | 7 calendar days prior to the Settlement Hearing |
| Final Settlement Hearing | Approximately 60 days after the Notice Date |

## VI.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant preliminary approval to the proposed Settlement.

DATED: December 9, 2016          Respectfully submitted,

SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP

*/s/* John T. Jasnoch

20

1
2
3

John T. Jasnoch (CA 281605)
jjasnoch@scott-scott.com
655 North Central Ave., 17th Floor
Glendale, CA  91203
Telephone: 213-985-1274
Facsimile:   213-985-1278

4
5
6
7
8
9
10

SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
Judith S. Scolnick
jscolnick@scott-scott.com
Donald A. Broggi
dbroggi@scott-scott.com
Thomas L. Laughlin IV
tlaughlin@scott-scott.com
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:   212-223-6334

11
12
13
14
15

BOTTINI & BOTTINI, INC.
Francis A. Bottini Jr. (SBN 175783)
fbottini@bottinilaw.com
Yury A. Kolesnikov (SBN 271173)
ykolesnikov@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA  92037
Telephone: 858-914-2001
Facsimile:   858-914-2002

16
17
18
19

THE SHUMAN LAW FIRM
Kip B. Shuman (SBN 145842)
Kip@shumanlawfirm.com
1 Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone: 303-861-3003
Facsimile:   303-536-7849

20
21
22
23

THE SHUMAN LAW FIRM
Rusty E. Glenn
Rusty@shumanlawfirm.com
600 17th Street, Suite 2800 South
Denver, Colorado 80202
Telephone: 303-861-3003
Facsimile:   303-536-7849

24

*Co-Lead Counsel for Plaintiffs*

25
26
27
28

21