John T. Jasnoch (281605)
jjasnoch@scott-scott.com
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
655 North Central Ave., 17th Floor
Glendale, CA 91203
Telephone: (213) 985-1274
Facsimile:  (213) 985-1278

Francis A. Bottini, Jr. (175783)        Kip B. Shuman (145842)
Yury A. Kolesnikov (271173)             Rusty E. Glenn
BOTTINI & BOTTINI, INC.                 THE SHUMAN LAW FIRM
7817 Ivanhoe Avenue, Suite 102          One Montgomery St., Suite 1800
La Jolla, CA 92037                      San Francisco, CA  94104
Telephone: (858) 914-2001               Telephone: (303) 861-3003
Facsimile:  (858) 914-2002              Facsimile:  (303) 536-7849

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| IN RE OSI SYSTEMS, INC. DERIVATIVE LITIGATION | Lead Case No. 14-cv-2910-MWF (MRWx) |
| This Document Relates to:<br><br>ALL ACTIONS | **DERIVATIVE ACTION**<br><br>**PLAINTIFFS' UNOPPOSED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT, AWARD OF ATTORNEYS' FEES AND EXPENSE, AND APPROVAL OF SERVICE AWARDS TO PLAINTIFFS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      May 1, 2017<br>Time:      10:00 a.m.<br>Courtroom:  5A<br>Judge:      Hon. Michael W. Fitzgerald |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     BACKGROUND OF THE LITIGATION AND THE SETTLEMENT ........ 2

        A.    Factual Background ............................................................... 2

        B.    Procedural History ................................................................ 3

        C.    Settlement Negotiations ........................................................ 4

        D.    Preliminary Approval and Notice to Shareholders ............... 6

        E.    Benefits of the Settlement ..................................................... 7

III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND
        ADEQUATE, AND WARRANTS FINAL APPROVAL ........................... 7

        A.    Legal Standards for Final Approval of Derivative Settlement ........... 8

        B.    The Settlement Satisfies the Standards for Final Approval ................ 9

              1.    The Settlement Confers Substantial
                    Benefits on the Company .......................................... 9

              2.    The Settlement Appropriately Weighs the Benefits Conferred
                    upon OSI with theSignificant Risks of
                    Continued Litigation ............................................... 12

              3.    The Extent of Discovery and Stage of the Proceedings .......... 14

              4.    The Settlement Was Negotiated at Arm's-Length by
                    Experienced Counsel ............................................... 16

              5.    Current OSI Shareholders Overwhelmingly Favor Final
                    Approval of the Settlement ...................................... 17

        C.    The Negotiated Amount of Attorneys' Fees and Expenses Should
              be Approved ........................................................................ 18

D.    The Requested Service Awards for Plaintiffs Are Reasonable and Appropriate.................................................................24

IV.    CONCLUSION ...........................................................................25

PLAINTIFFS' UNOPPOSED NTC OF MOT. AND MOT. FOR FINAL APPROVAL;
MEMORANDUM IN SUPPORT THEREOF
Lead Case No.  2:14-CV-2910-MWF (MRWx)

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*,
    85 Cal. App. 4th 1135 (2000)..............................................................18

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979)....................................................14

*Buccallato v. AT&T Operations, Inc.*,
    No. C10-00463-LHK, 2011 WL 3348055
    (N.D. Cal. June 30, 2011).................................................................24

*Chiulli v. Hardwicke Co.*,
    1985 WL 11532 (Del. Ch. Feb. 11, 1985).........................................18

*Cohn v. Nelson*,
    375 F. Supp. 2d 844 (E.D. Mo. 2005).................................................8

*County of York Employees Retirement Plan
    and Lynne Schwartz v. Jung*,
    Index No. 651304/2010 (N.Y. Sup., N.Y. Cty.)...............................22

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)..............................................................14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)...........................................................16

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ........................................................................19

*In re AOL Time Warner S'holder Deriv. Litig.*,
    No. 02 Civ. 6302, 2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) ........8

*In re Apple Computer, Inc. Deriv. Litig.*,
    No. C 06-4128, 2008 WL 4820784 (N.D. Cal. Nov. 5, 2008)...................17, 19

iii

*In re Atmel Corp. Deriv. Litig.*,
    No. C 06-4592, 2010 WL 9525643 (N.D. Cal. Mar. 31, 2010) .................... 9, 16

*In re Austrian and German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ....................................................... 16

*In re Cadence Design Systems, Inc. Sec. & Deriv. Litig.*,
    No. C-008-49661 SC, 2012 WL 1414092
    (N.D. Cal. Apr. 23, 2012) ..................................................................... 24

*In re Cendant Corp., Deriv. Action Litig.*,
    232 F. Supp. 2d 327 (D.N.J. 2002) ....................................................... 25

*In re DaVita Healthcare Partners, Inc., Deriv. Litig.*,
    No. 12-cv-2074, 2015 WL 3582265 (D. Colo. June 5, 2015)..................... 22, 24

*In re First Capital Holdings Corp. Fin. Prod. Sec. Litig.*,
    MDL No. 901, 1992 WL 226321 (C.D. Cal. June 10, 1992)........................... 17

*In re Hewlett-Packard Co. S'holder Deriv. Litig.*,
    No. 3:12-cv-06003, 2015 WL 1153864 (N.D. Cal. Mar. 13, 2015) ........... 10, 20

*In re Impax Lab., Inc. S'holder Deriv. Litig.*,
    No. 14-cv-04266, 2015 WL 5168777 (N.D. Cal. Sept. 3, 2015) ...................... 13

*In re Johnson & Johnson Deriv. Litig.*,
    Nos. 10-2033, 11-4993, 11-2511 (D.N.J. 2013) ................................................. 23

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .............................................................. 14

*In re MRV Commc'ns, Inc. Deriv. Litig.*,
    No. CV 08-03800, 2013 WL 2897874 (C.D. Cal. June 6, 2013)..... 10, 16, 19, 21

*In re NVIDIA Corp. Deriv. Litig.*,
    No. C-06-06110, 2008 WL 5382544 (N.D. Cal. Dec. 28, 2008).................. 9, 20

*In re Pac. Enter. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ............................................................. 9, 13, 17, 21

*In re Rambus Inc. Deriv. Litig.*,
    No. C 06-3513, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) .................... 10, 20

iv

*In re SmithKline Beckman Corp. Sec. Litig.*,
   751 F. Supp. 525 (E.D. Pa. 1990)........................................................ 18

*Klein v. City of Laguna Beach*,
   810 F.3d 693 (9th Cir. 2016)............................................................... 20

*Lambrecht v. Taurel*,
   No. 1:08-cv-68, 2010 WL 2985943 (S.D. Ind. July 27, 2010) ........................ 23

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983)................................................... 8, 12, 14

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ..................................................................... 9, 20

*Mohammed v. Ells*,
   No. 12-cv-1831, 2014 WL 4212687 (D. Colo. Aug. 26, 2014)...................... 12

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
   688 F.2d 615 (9th Cir. 1982)................................................ 8, 9, 12, 14

*Plymouth County Contributory Ret. Sys. v. Hassan*,
   No. 08-1022, 2012 WL 664827 (D.N.J. Feb. 28, 2012) ............................... 23

*Rales v. Blasband*,
   634 A.2d 927 (Del. 1993).................................................................... 13

*Roberti v. OSI Systems Inc.*,
   Case No. 2:13-cv-09174 (C.D. Cal.) .................................................. 3, 13

*Roberti v. OSI Systems Inc.*,
   No. 2:13-cv-09174, 2015 WL 8329916 (C.D. Cal. 2013) ........................... 24

*Rome v. Archer*,
   197 A.2d 49 (Del. 1964)...................................................................... 18

*Rubery v. Kleinfeld*,
   No. 2:12-cv-00844 (W.D. Pa. 2014) ..................................................... 23

*Ryan v. Gifford*,
   C.A. No. 2213-CC, 2009 Del. Ch. LEXIS 1 (Del. Ch. Jan. 2, 2009) ............... 18

PLAINTIFFS' UNOPPOSED NTC OF MOT. AND MOT. FOR FINAL APPROVAL;
MEMORANDUM IN SUPPORT THEREOF
Lead Case No.  2:14-CV-2910-MWF (MRWx)

*Sved v. Chadwick*,
    783 F. Supp. 2d 851 (N.D. Tex. 2009)...........................................................12, 15

*Touhy v. Ragen*,
    340 U.S. 462 (1951) ...................................................................................13

*U.S. v. McInnes*,
    556 F.2d 436 (9th Cir. 1977)...........................................................................8

*Unite Nat'l Ret. Fund v. Watts*,
    No. 04CV3603DMC, 2005 WL 2877899
    (D.N.J. Oct. 27, 2005) .................................................................................22

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)........................................................................24

*Warner v. Lesar*,
    No. 2011-09567 (Tex. Dist., Harris Cty. Oct. 1, 2012) ..................................22

*Wehlage v. Evergreen at Arvin LLC*,
    No. 4:10-cv-05839, 2012 WL 4755371 (N.D. Cal. Oct. 4, 2012) ...................19

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910) .....................................................................................8

**Statutes, Rules, and Regulations**

Federal Rules of Civil Procedure
    Rule 23.1.........................................................................................................8
    Rule 23.1(c) ....................................................................................................8

6 C.F.R.
    §5.45(a) .........................................................................................................14
    §5.48(a) .........................................................................................................14

8 Del. C.
    §220 .........................................................................................................4, 15

**Other Authorities**

Paul A. Gompers, *Corporate Governance and Equity Prices*,
    Q.J. Econ. 118(1) (2003) ..............................................................................20

vi

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

vii

# GLOSSARY

| Abbreviation | Full Description |
|---|---|
| "Actions" | The California Action and the Delaware Action |
| "AIT" | Advanced Imaging Technology |
| "Board" | OSI's Board of Directors |
| "California Action" | *In re OSI Sys., Inc. Deriv. Litig.*, Lead Case No. 14-cv-2910-MWF (MRWx) (C.D. Cal.) |
| "California Plaintiffs" | Plaintiffs City of Irving and Hagan |
| "City of Irving" | Plaintiff City of Irving Supplemental Benefit Plan |
| "Co-Lead Counsel" | Co-lead counsel for California Plaintiffs |
| "Defendants" | Individual Defendants and OSI |
| "Delaware Action" | *Kocen v. Chopra*, No. 11291-VCL (Del. Ch.) |
| "Delaware Plaintiff" | Plaintiff Jeffrey Kocen in the Delaware Action |
| "DHS" | Department of Homeland Security |
| "Fee and Expense Award" | Any sum paid to Plaintiffs' Counsel for their attorneys' fees and expenses as an award by this Court in recognition of the benefits conferred upon OSI |
| Final Order and Judgment | The [Proposed] Final Order and Judgment submitted herewith |
| "Governance Measures" | Reforms to OSI's corporate governance measures, resulting from the Settlement |
| "Hagan" | Plaintiff Marc Hagan |

viii

| Abbreviation | Full Description |
|---|---|
| "Individual Defendants" | Defendants Deepak Chopra, William Ballhaus, David Feinberg, Steven Good, Meyer Luskin, Ajay Mehra, and Alan Edrick |
| "Kocen" | Delaware Plaintiff Jeffrey Kocen |
| "Judge Phillips" | The Honorable Layn R. Phillips (Ret.) |
| "OSI" or the "Company" | Nominal Defendant OSI Systems, Inc. |
| "Plaintiffs" | Hagan, City of Irving, and Delaware Plaintiff |
| "Plaintiffs' Counsel" | (i)    Bottini & Bottini, Inc., 7817 Ivanhoe Avenue, Suite 102, La Jolla, CA 92037; (ii) The Shuman Law Firm, One Montgomery Street, Suite 1800, San Francisco, CA 94104; (iii) Scott+Scott, Attorneys at Law, LLP, 655 North Central Avenue, 17th Floor, Glendale, CA 91203; (iv) Safirstein Metcalf LLP, 1250 Broadway, 27th Floor, New York, NY 10001, and (v) Hung G. Ta, Esq. PLLC, 250 Park Avenue, 7th Floor, New York, NY 10177. |
| "Preliminary Approval Order" | Preliminary Approval and Scheduling Order entered by this Court on January 24, 2017 |
| "Professor Morrisey" | Professor Daniel Morrisey of Gonzaga University School of Law |
| "Rapiscan" | Rapiscan Systems, Inc. |
| "Settlement" | The settlement entered into between Plaintiffs and Defendants, as reflected in the Stipulation |
| "Settling Parties" | Plaintiffs and Defendants |

PLAINTIFFS' UNOPPOSED NTC OF MOT. AND MOT. FOR FINAL APPROVAL;
MEMORANDUM IN SUPPORT THEREOF
Lead Case No.  2:14-CV-2910-MWF (MRWx)

| Abbreviation | Full Description |
|---|---|
|  |  |
| "Scolnick Declaration" | Declaration of Judith Scolnick in Support of Motion for Final Approval of Settlement |
| "Stipulation" | Stipulation and Agreement of Settlement, dated November 23, 2016, entered into by Plaintiffs and Defendants |
| "TSA" | Transportation Security Administration |

x

**TO:   ALL PARTIES AND THEIR COUNSEL OF RECORD**

**PLEASE TAKE NOTICE** that on May 1, 2017, at 9:00 a.m., or at such other time date and time as ordered by the Court, in Courtroom 5A of the United States District Court for the Central District of California, located at the First Street Courthouse, 350 West First Street, Los Angeles, California 90012, Marc Hagan and City of Irving Supplemental Benefit Plan, Plaintiffs in the above captioned shareholder derivative action (the "Action"), will appear before the Honorable Michael W. Fitzgerald to move (the "Motion"), pursuant to Rule 23.1 of the Federal Rules of Civil Procedure and Local Rule 7 for this District, for entry of an order granting final approval of the Stipulation and Agreement of Settlement (the "Stipulation") entered between and among the Parties to the Action.

This Motion seeks entry of the [Proposed] Final Order and Judgment, which: (1) approves the Settlement set forth in the Stipulation; (2) dismisses the California Action with prejudice and without costs to Defendants or OSI, except as otherwise provided in the Stipulation; (3) directs the Delaware Plaintiff to file dismissal with prejudice of the Delaware Action; (4) enjoins the Releasing Parties from commencing, instituting, or prosecuting any of the Released Claims; (5) finds that the Notice of Pendency and Proposed Settlement was given in accordance with the Preliminary Approval Order, and that such Notice was reasonable and complied with the requirements of federal law and due process; and (6) approves the Fee and Expense Award to Plaintiffs' Counsel in the amount of $1.6 million and directs payment in accordance with the Stipulation.[1]

---

[1]   The [Proposed] Final Order and Judgment is both filed contemporaneously with the Motion as a Proposed Order and attached as Exhibit C to the Stipulation of Settlement, which is filed as Exhibit A to the Scolnick Declaration filed contemporaneously herewith.

1

1    This Motion is brought pursuant to the terms of the Stipulation and this

2  Court's Order granting preliminary approval to this Settlement.   Counsel for all

3  parties have conferred over a period of several months concerning the substance of

4  this Motion pursuant to Local Rule 7-3.

5

6  DATED:  April 10, 2017              Respectfully submitted,

7                                     SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

8

9                                     _____
                                       John T. Jasnoch (281605)
10                                     jjasnoch@scott-scott.com
                                       655 North Central Ave., 17th Floor
11                                     Glendale, CA  92103
                                       Telephone: (213) 985-1274
12                                     Facsimile:  (213) 985-1278

13                                     SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
14                                     Judith Scolnick (*pro hac vice*)
                                       Thomas Laughlin (*pro hac vice*)
15                                     The Helmsley Building
16                                     230 Park Avenue, 17th Floor
                                       New York, NY  10169
17                                     Telephone: (212) 223-6444
18                                     Facsimile:  (212) 223-6334

19
                                       BOTTINI & BOTTINI, INC.
20                                     Francis A. Bottini Jr. (175783)
21                                     fbottini@bottinilaw.com
                                       Yury A. Kolesnikov (271173)
22                                     ykolesnikov@bottinilaw.com
23                                     7817 Ivanhoe Avenue, Suite 102
                                       La Jolla, CA 92037
24                                     Telephone:  (858) 914-2001
25                                     Facsimile:   (858) 914-2002

26

27                                              2

28

THE SHUMAN LAW FIRM
Kip B. Shuman (145842)
kip@shumanlawfirm.com
Rusty E. Glenn
rusty@shumanlawfirm.com
One Montgomery St., Suite 1800
San Francisco, CA 94104
Telephone:  (303) 861-3003
Facsimile:  (303) 536-7849

*Co-Lead Counsel for Plaintiffs*

PLAINTIFFS' UNOPPOSED NTC OF MOT. AND MOT. FOR FINAL APPROVAL;
MEMORANDUM IN SUPPORT THEREOF
Lead Case No.  2:14-CV-2910-MWF (MRWx)

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Marc Hagan and City of Irving Supplemental Benefit Plan respectfully submit this memorandum of points and authorities in support of their Unopposed Motion for Final Approval of Settlement, and entry of the [Proposed] Final Order and Judgment.[2]

## I. INTRODUCTION

On November 23, 2016, Plaintiffs, Nominal Defendant OSI, and the Individual Defendants entered into the Settlement of the Actions as reflected in the Stipulation. On January 24, 2017, this Court entered the Preliminary Approval Order, and approved the Notice and Summary Notice to OSI shareholders, which were duly provided. To date, no shareholder has filed an objection to the Settlement. Plaintiffs now seek entry of the [Proposed] Final Order and Judgment, which: (1) approves the Settlement set forth in the Stipulation; (2) dismisses the California Action with prejudice and without costs, except as otherwise provided in the Stipulation; (3) directs the Delaware Plaintiff to file dismissal with prejudice of the Delaware Action; (4) enjoins the Releasing Parties from commencing, instituting, or prosecuting any of the Released Claims; (5) finds that the Notice of Pendency and Proposed Settlement was given in accordance with the Preliminary Approval Order, and that such Notice was reasonable and complied with due process requirements; and (6) approves the Fee and Expense Award to Plaintiffs' Counsel in the amount of $1.6 million and Service Awards of $5,000 per Plaintiff

---

[2] The Stipulation of Settlement is filed as Exhibit A to the Declaration of Judith Scolnick filed contemporaneously herewith ("Scolnick Decl."). All capitalized terms herein, unless otherwise defined, have the same meaning as set forth in the Stipulation. The [Proposed] Final Order and Judgment is both filed contemporaneously as a Proposed Order and attached as Exhibit C to the Stipulation of Settlement.

1

(to be paid from the Fees and Expense Award) and directs payment in accordance with the Stipulation.   Pursuant to Local Rule 7-3, counsel for all Parties have conferred over a period of several months concerning the substance of this Motion pursuant to Local Rule 7-3.

The Settlement is the product of extensive, arm's-length negotiations with assistance from a mediator, Judge Layn Phillips ("Judge Phillips").   Pursuant to the Settlement, OSI has agreed to adopt and implement significant corporate governance reforms that strengthen the Company's internal controls, and enhance the independence and accountability of the Board.   These corporate reforms substantially benefit OSI and its shareholders.

## II.   BACKGROUND OF THE LITIGATION AND THE SETTLEMENT

### A.   Factual Background

This is a consolidated shareholder derivative lawsuit against the members of OSI's Board alleging that the Individual Defendants breached their fiduciary duties as directors and/or officers of OSI by: (1) causing the Company to disseminate false and misleading statements to investors and the U.S. Government in violation of the federal securities laws and regulatory requirements governing private company contracts with government agencies; (2) failing to implement adequate internal controls; and (3) failing to put in place an information and reporting system related to government contracting and compliance.   Plaintiffs allege that these breaches led to costly consequences for OSI and its stockholders.

OSI's core business segment is Rapiscan, a developer and manufacturer of security systems which are primarily used in airports.   The Company's largest customers are the DHS and the TSA.   Plaintiffs allege that the Individual Defendants caused Rapiscan to conceal certain defects in its body scanner products by cherry picking modified scanners for TSA testing and indicating that those

select scanners were representative of its efforts to comply with new design requirements. When the TSA learned that Rapiscan may have misrepresented certain testing results due to the nonrepresentative scanners, the TSA issued a show cause letter in November 2012, expressing concerns that Rapiscan had not timely disclosed certain issues relating to its software development and questioning whether Rapiscan had manipulated the operational test. In January 2013, Rapiscan and TSA reached agreement to resolve the issues raised in the show cause letter. This agreement called for Rapiscan to terminate its body scanner software development contract with the TSA, but permitted Rapiscan's overall body scanner contract with the TSA to continue and the TSA to continue to utilize previously purchased body scanner units in other venues. Thereafter, the DHS issued a Notice of Proposed Debarment on May 20, 2013, that automatically suspended OSI from bidding on any government contracts. Subsequently, OSI and DHS entered into a 30-month Administrative Agreement relating to the issues described in the Notice of Proposed Debarment.

In addition to the issues with the body scanners, Plaintiffs allege that Rapiscan was also using an unapproved Chinese part in its baggage scanners in violation of the Company's contracts with the TSA. When the TSA discovered the unapproved parts, it issued a second show cause letter on November 20, 2013, and later cancelled a $67 million delivery order for the installation of baggage scanners. As a result of these events, Plaintiffs filed the Actions. In addition, certain shareholders filed a related securities fraud class action lawsuit, *Roberti v. OSI Systems Inc.*, Case No. 2:13-cv-09174-MWF (MRWx) (C.D. Cal.).

## B. Procedural History

On April 15, 2014, Plaintiff Hagan commenced the first shareholder derivative action on behalf of OSI and against the Individual Defendants. The

3

Hagan Action asserted three claims: (1) breach of fiduciary duties for disseminating misleading information; (2) breach of fiduciary duties for failing to maintain adequate internal controls; and (3) unjust enrichment.

On December 29, 2014, the City of Irving commenced the second shareholder derivative action on behalf of OSI. City of Irving's complaint followed a shareholder demand for books and records pursuant to 8 Del. C. §220 that was made on February 11, 2014. On February 26, 2015, following the denial of OSI's motion to dismiss in the related securities fraud class action, the Court granted the California Plaintiffs' motion to consolidate the two derivative actions and appointed Scott+Scott, Attorneys at Law, LLP, Bottini & Bottini, Inc., and The Shuman Law Firm as Co-Lead Counsel. The California Plaintiffs filed a consolidated complaint on August 25, 2015.

On July 20, 2015, Kocen commenced the third shareholder derivative action on behalf of OSI in the Delaware Court of Chancery. Kocen's complaint followed a shareholder demand for books and records under 8 Del. C. §220 that was made on January 31, 2014, and asserted two claims against the Individual Defendants for breach of fiduciary duty.

On February 10, 2016, Defendants filed a comprehensive motion to dismiss and in the alternative a motion to stay the California Action, and a motion to dismiss the Delaware Action. The California Plaintiffs filed their opposition on March 11, 2016, and Defendants filed their reply on April 1, 2016. The Delaware Plaintiff filed his opposition on April 4, 2016, and Defendants filed their reply on May 3, 2016.

### C. Settlement Negotiations

Beginning in June 2015, the parties began discussions relating to a possible settlement through mediation, and ultimately agreed to participate in a formal

4

mediation session with Judge Phillips.

In September 2015, prior to mediation, Plaintiffs retained a corporate governance expert, Professor Daniel Morissey of Gonzaga University School of Law, to review the allegations in the complaint filed in the California Action and provide recommendations on potential governance reforms that would benefit OSI and its shareholders. In consultation with Professor Morrissey, the California Plaintiffs drafted a settlement demand which included comprehensive governance reforms designed to remedy the breaches of fiduciary duty and internal control deficiencies at OSI. Separately, the Delaware Plaintiff also made a settlement demand on Defendants. Collectively, Plaintiffs' Counsel proceeded to engage in several rounds of telephonic discussions and exchanged several more written proposals with counsel for OSI and the Individual Defendants.

On March 18, 2016, while Defendants' motion to dismiss and/or stay was pending, and after several exchanges of settlement proposals, the Settling Parties conducted an in-person, day-long mediation with Judge Phillips. At the mediation, the parties reached agreement on a number, but not all, of the terms for corporate governance reforms. As a result, the parties were unable to reach a final settlement.

Even though settlement could not be reached at the mediation, the Settling Parties continued their negotiations in the succeeding months with the assistance of Judge Phillips. Several months after the mediation, the parties finally reached agreement on all the material terms for the corporate governance reforms. On July 7, 2016, the Settling Parties executed a term sheet for Settlement of the Actions. Plaintiffs notified the Court of the pendency of the Settlement on July 8, 2016.

At the time the term sheet was executed, the Settling Parties had not discussed the amount of attorneys' fees to be paid to Plaintiffs' Counsel for the

5

benefits conferred upon OSI through the Settlement. Only after the negotiations on corporate governance therapeutics was concluded did the Settling Parties commence discussions regarding the payment and amount of Plaintiffs' attorneys' fees. The discussions concerning Plaintiffs' attorneys' fees and expenses were conducted solely through Judge Phillips' office.

Because the Settling Parties were unable to reach agreement on Plaintiffs' attorneys' fees, the Settling Parties agreed to submit the question of the amount of legal fees to Judge Phillips for a binding independent determination. The Settling Parties further agreed that Plaintiffs' Counsel's application to this Court for an award of legal fees and expenses would not exceed the amount determined by Judge Phillips. On November 10, 2016, after receiving written submissions and after hearing oral argument from the Settling Parties, Judge Phillips determined that Defendants should pay Plaintiffs' Counsel a Fees and Expense Award of $1.6 million.

### D. Preliminary Approval and Notice to Shareholders

On January 24, 2017, the Court entered the Preliminary Approval Order. ECF No. 93. Pursuant to the terms of the Preliminary Approval Order, OSI caused the Notice to be published twice in the national edition of *Investor's Business Daily* on February 6 and February 13, 2017, posted the Notice and the Stipulation of Settlement on OSI's Investor Relations website, and included a statement in the quarterly 10-Q filed with the SEC on February 1, 2017, which directs shareholders to the settlement information posted on OSI's Investor Relations website. California Plaintiffs' Co-Lead Counsel also posted the Settlement and Notice on their websites. To date, not one OSI shareholder has objected to the Settlement or the Fee and Expense Award.

PLAINTIFFS' UNOPPOSED NTC OF MOT. AND MOT. FOR FINAL APPROVAL;
MEMORANDUM IN SUPPORT THEREOF
Lead Case No.  2:14-CV-2910-MWF (MRWx)

### E.   Benefits of the Settlement

The proposed Settlement required OSI to significantly update and improve its corporate governance by implementing the comprehensive terms set forth in Exhibit A-1 to the Scolnick Decl.  In sum, OSI is required to implement, *inter alia*, the following corporate governance reforms:

(i)    appoint a new independent director, with compliance-related experience in a highly regulated industry, before its shareholder meeting that took place in December 2016;

(ii)    appoint a "Lead Independent Director" position to the board of directors;

(iii)    strengthen review and training in corporate governance policies for the CEO, CFO, General Counsel, Vice President of Compliance, and all directors;

(iv)    enhance oversight of the Company's compliance function;

(v)    revise the Company's clawback and insider trading policies;

(vi)    approve a Technology Committee Charter;

(vii)    amend its compensation policies and Compensation Committee Charter to include compliance as a factor in determining incentive compensation; and

(viii)   amend the Audit Committee Charter to require quarterly reports from the Vice President of Compliance on the adequacy and funding of OSI's compliance program.

## III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND WARRANTS FINAL APPROVAL

The Settlement creates significant, material benefits for OSI and is the result of intense, arm's-length negotiations by experienced counsel.  As a result of the filing, prosecution, and settlement of the Actions, Defendants have agreed to implement substantial corporate governance reforms designed to prevent the recurrence of the very misconduct alleged in the Actions.  Accordingly, Plaintiffs

7

respectfully submit that the Settlement is fair, reasonable, adequate, and should be approved by the Court.

**A.    Legal Standards for Final Approval of Derivative Settlement**

It is well settled that "[c]ompromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910);[3] *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 635 (9th Cir. 1982) (recognizing that the "settlement process [is] favored in the law"); *U.S. v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977) (explaining that "there is an overriding public interest in settling and quieting litigation"). This is particularly true with respect to shareholder derivative litigation, "because such litigation is 'notoriously difficult and unpredictable.'" *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983). *See also In re AOL Time Warner S'holder Deriv. Litig.*, No. 02 Civ. 6302(SWK), 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006) (recognizing that public policy favors settlement of shareholder derivative litigation); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (settlement of shareholder derivative suits is "particularly favored").

Under Federal Rule of Civil Procedure 23.1, court approval is required for any settlement, voluntary dismissal, or compromise of the claims by the parties. Fed. R. Civ. P. 23.1(c). While the district court exercises its "sound discretion" in evaluating a settlement, in exercising its discretion "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable

---

[3]    Unless otherwise noted, citations are omitted.

and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625; *see also In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 377-78 (9th Cir. 1995) (affirming ruling that shareholder derivative settlement was "'fair, reasonable and adequate to [the company]'").

In determining whether a settlement is fair, reasonable, and adequate, courts consider the following factors:  (a) the benefits conferred on the corporation; (b) the risks, costs, and delays of continued litigation; (c) the stage of proceedings; (d) whether the settlement is the product of arm's-length negotiations by experienced counsel; and (e) the reaction of shareholders to the proposed settlement.  *See Officers for Justice*, 688 F. 2d at 625.  The Ninth Circuit, however, has cautioned that "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits." *Id.*

## B.   The Settlement Satisfies the Standards for Final Approval

As discussed in detail below, the Settlement merits final approval.

### 1.   The Settlement Confers Substantial Benefits on the Company

"'The principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest.'"  *In re Atmel Corp. Deriv. Litig.*, No. C 06-4592, 2010 WL 9525643, at *12 (N.D. Cal. Mar. 31, 2010).  Corporate governance measures such as those achieved here provide valuable benefits to public companies.  *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395-96 (1970) ("[A] corporation may receive a 'substantial benefit' from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature," because "'corporate therapeutics' . . . furnish a benefit to all shareholders"); *see also In re NVIDIA*

9

*Corp. Deriv. Litig.*, No. C-06-06110-SBA (JCS), 2008 WL 5382544, at *3 (N.D. Cal. Dec. 28, 2008); *In re Rambus Inc. Deriv. Litig.*, No. C 06-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009); *In re Hewlett-Packard Co. S'holder Deriv. Litig.*, No. 3:12-cv-06003-CRB, 2015 WL 1153864, at *5 (N.D. Cal. Mar. 13, 2015); *In re MRV Commc'ns, Inc. Deriv. Litig.*, No. CV 08-03800 GAF (MANx), 2013 WL 2897874, at *6 (C.D. Cal. June 6, 2013).

As a direct result of the filing and prosecution of the Actions, OSI has agreed to adopt and implement the Governance Measures. OSI's Board of Directors has approved the Settlement, in which the Board acknowledges that the Governance Measures "confer a substantial and material benefit to OSI and Current OSI Shareholders." Scolnick Decl. Ex. A., §2.2. In particular, the Settlement provides for the appointment of a new, additional independent director who must have compliance-related experience. Scolnick Decl. Ex. A-1 at 2. This will add a seventh director, ensure that the Board cannot deadlock, and add relevant, valuable compliance-related experience to the Board.

In addition, OSI will appoint a lead independent director (*id.*), a measure designed to further protect the Board from being dominated by management or one or two directors. The other provisions of the Settlement are similarly designed to prevent reoccurrence of the wrongdoing alleged in Plaintiffs' complaints. The other provisions include: (i) amending compensation policies and the Compensation Committee Charter so that compliance will be a factor in determining incentive compensation; (ii) corporate governance training for the Board; (iii) the creation of a Technology Committee Charter; (iv) corporate governance reviews by an ethics and compliance specialist for one year after the Administrative Agreement reached between the United States and OSI expires in December 2017; (v) amending the Audit Committee Charter to specify its role in

10

assessing the adequacy of the compliance program's funding and to state that the Vice President of Compliance shall review the compliance program with the Committee on a quarterly basis; and (vi) revisions to OSI's Clawback Policy and Insider Trading Policy.  Scolnick Decl. Ex. A-1.

Moreover, the materiality of these benefits is confirmed by Professor Daniel Morrissey, Plaintiffs' corporate governance expert.  In his detailed declaration, submitted herewith (Scolnick Decl. Ex. B), Professor Morrissey explains the substantial nature of the Governance Measures, how they have been carefully drafted to directly address the specific wrongdoing alleged in the Actions, how the Governance Measures substantially reduce the risk that the wrongdoing which occurred here (misrepresentations to government agencies, OSI's principal clients) would occur again, and how the Governance Measures will substantially improve the corporate governance at OSI and lead to an improved market capitalization and other benefits to OSI and its shareholders.  *See* Scolnick Decl. Ex. B, ¶¶30-51; ¶¶69-71.[4]

The fact that the governance reforms provided by the Settlement directly

---

[4]     *See*, *e.g*., Scolnick Decl. Ex. B, ¶32 ("adoption of a formal charter for the [Technology] committee will help ensure the effective functioning of the committee and improve the Board's review of government regulations or contractual requirements involving the Company's technology"); ¶34 (requirement for OSI to retain an ethics and compliance specialist "will [ ] continue to foster a top-down commitment at OSI to a culture of ethical integrity and full legal compliance"); ¶¶35-36 (reforms to Audit Committee Charter such as "specifically charg[ing] the Audit Committee to make management aware of its views on whether the Company's compliance programs are adequately funded" and requiring "the VP of Compliance . . . to review the Company's Compliance program with the Audit Committee every three months" are necessary and warranted); ¶41 ("appointment of a lead independent director will remedy that monopoly of power and create a situation where Mr. Chopra will be more accountable to the board"); ¶48 (revisions to clawback policy go beyond Sarbanes Oxley and will thus guard against any officials of the Company profiting from the type of wrongdoing alleged in these Derivative Actions"); ¶49 (revisions to insider trading policy "will provide another safeguard to expose such insider trading and therefore deter that illegal activity").

PLAINTIFFS' UNOPPOSED NTC OF MOT. AND MOT. FOR FINAL APPROVAL;
MEMORANDUM IN SUPPORT THEREOF
Lead Case No.  2:14-CV-2910-MWF (MRWx)

target the organizational and corporate compliance failures alleged in the Actions strongly militates in favor of approval.  *See Sved v. Chadwick*, 783 F. Supp. 2d 851, 864 (N.D. Tex. 2009) (approving derivative litigation settlement because it "offers tangible, long-term remedial measures that are specifically designed to avoid the alleged missteps in [the company's] past and protect shareholders as the company moves forward"); *Mohammed v. Ells*, No. 12-cv-1831-WJM-MEH, 2014 WL 4212687, at *3 (D. Colo. Aug. 26, 2014) (finding settlement fair and adequate where "the corporate governance reforms provided for as part of the settlement are specifically and appropriately designed to prevent the recurrence of the alleged misconduct that formed the basis for this action."); *Maher*, 714 F.2d at 466 ("a settlement may fairly, reasonably, and adequately serve the best interest of a corporation, on whose behalf the derivative action is brought, even though no direct monetary benefits are paid by the defendants to the corporation") (citing *Goldman v. Northrop Corp.*, 603 F.2d 106, 108-09 (9th Cir. 1979)).

The Settlement achieves for OSI and its shareholders the substantial benefit of significant reforms that will materially improve the Company's corporate governance.  *See supra* §II.D.; Scolnick Decl. Ex. A-1.  These reforms are not only designed to address the "corporate trauma" alleged in the Complaint, but also to strengthen and enhance compliance, as well as oversight of compliance, in a highly regulated industry.   These reforms also enhance the independence and accountability of the Board and its various governing committees.

### 2. The Settlement Appropriately Weighs the Benefits Conferred upon OSI with the Significant Risks of Continued Litigation

In assessing the fairness, reasonableness, and adequacy of a settlement, the Court should balance the benefits of the Settlement against the continuing risks of litigation.  *Officers for Justice*, 688 F.2d at 625.  As courts have commented,

12

1  derivative actions are fraught with risk.  Indeed, the Ninth Circuit has stated that

2  "the odds of winning [a] derivative lawsuit [are] extremely small."  *In re Pac.*

3  *Enter.*, 47 F.3d at 378.

4          Here, because a pre-suit demand was not made on the Company's Board,

5  Defendants argued that Plaintiffs had not adequately alleged demand futility.  To

6  establish demand futility under controlling Delaware law, Plaintiffs would have

7  had to establish that a majority of the board (1) was "interested" by facing a

8  substantial likelihood of liability with respect to one or more of the alleged claims;

9  or (2) lacked "independence" by being beholden to an interested person.  *See Rales*

10  *v. Blasband*, 634 A.2d 927, 932-34 (Del. 1993).  To satisfy this standard, Plaintiffs

11  would have had to overcome the presumption that directors are "faithful to their

12  fiduciary duties."  *In re Impax Lab., Inc. S'holder Deriv. Litig.*, No. 14-cv-04266-

13  HSG, 2015 WL 5168777, at *4 (N.D. Cal. Sept. 3, 2015).

14          Although Plaintiffs' counsel reviewed hundreds of pages of internal

15  confidential documents produced by Defendants pursuant to various "books and

16  records demands.  Defendants also argued that Plaintiffs would have had difficulty

17  in obtaining formal discovery in this case because of the requirements under *Touhy*

18  *v. Ragen*, 340 U.S. 462 (1951), which prohibits the disclosure of agency

19  information in a civil litigation without the agency's express consent and a

20  plaintiff's compliance with the agency's procedures.  As it explained in the *Roberti*

21  class action, TSA would have insisted on Plaintiff's strict compliance with *Touhy*

22  before it permitted the production of any documents created or prepared by (1)

23  "TSA and shared with Defendants in the course of contract performance, such as

24  technical specifications, test reports and others;" or (2) "Rapiscan and provided to

25  TSA as a deliverable under its TSA contract(s)," whether the documents are in the

26  possession of Defendants or TSA.  Scolnick Decl Ex. C at 1.  These documents

27

28

were important to the claims in Plaintiffs' case. In order to obtain these documents, Plaintiffs would first have had to submit a written request to TSA identifying "with as much specificity as possible, the nature and relevance of the official information sought." 6 C.F.R. §5.45(a). However, TSA has broad discretion in deciding whether to comply with such requests, and if Plaintiffs wanted to challenge any refusal of TSA to provide documents, Plaintiffs would have had to initiate a separate lawsuit. 6 C.F.R. §5.48(a).

Considering the difficulty and unpredictability of a lengthy and complex trial, the benefits of obtaining a Settlement were significant. It is also clear that even a victory at trial is no guarantee that the judgment would ultimately be sustained on appeal or by the trial court in post-trial motions. The proposed Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several more years of litigation, while providing OSI with substantial benefits immediately. *See, e.g.*, *Maher*, 714 F.2d at 466 (affirming approval of derivative settlement where district court found that "'the parties' conclusion, that any possible benefit to [the company] from pursuing the remaining causes of action could be more than offset by the additional cost of litigation, [wa]s based on an intelligent and prudent evaluation of their case.'")

### 3.     The Extent of Discovery and Stage of the Proceedings

Courts also consider the extent of discovery completed and the stage of the proceedings together as one factor in determining the fairness, reasonableness, and adequacy of the proposed Settlement. *Officers for Justice*, 688 F.2d at 625; *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979). The Ninth Circuit has noted that "'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin.*

14

PLAINTIFFS' UNOPPOSED NTC OF MOT. AND MOT. FOR FINAL APPROVAL;
MEMORANDUM IN SUPPORT THEREOF
Lead Case No.  2:14-CV-2910-MWF (MRWx)

*Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *see also Sved*, 783 F. Supp. 2d at 861 (Courts "look[] not to the amount of discovery, but rather to 'whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settl[ement].'").

Here, Plaintiffs and Plaintiffs' Counsel have engaged in extensive investigation, document discovery, and other litigation efforts throughout the prosecution of the Action, including, among other things:  (1) reviewing and analyzing hundreds of pages of non-public documents relating to the claims produced by OSI in response to shareholder inspection demands; (2) reviewing OSI's press releases, public statements, U.S. Securities and Exchange Commission ("SEC") filings, and securities analysts' reports and advisories about the Company; (3) reviewing media reports about the Company; (4) researching the applicable law with respect to the claims alleged in the Actions and the potential defenses thereto; (5) preparing and filing multiple derivative complaints; (6) conducting damages analyses; (7) participating in informal conferences with Defendants' Counsel regarding the specific facts of the cases, the perceived strengths and weaknesses of the cases, and other issues in an effort to facilitate negotiations and fact gathering; (8) reviewing hundreds of pages of internal OSI documents concerning its existing corporate governance structure that were produced prior to the mediation; (9) participating in a day-long mediation and several follow-up conferences; and (10) negotiating this Settlement with Defendants.  Scolnick Decl. Ex. A at 6-7.

Specifically, the internal company documents Plaintiffs obtained from OSI pursuant to their shareholder inspection demands under 8 Del. C. §220 and those produced prior to the mediation thoroughly described the Company's existing compliance structure, as well as reviews from an independent third party retained

by OSI under the Administrative Agreement to assist OSI in enhancing its compliance profile. The accumulation of the information discovered through the above efforts enabled Plaintiffs and Plaintiffs' Counsel to be well informed about the strengths and weaknesses of the cases and to engage in effective settlement discussions with Defendants. Scolnick Decl. Ex. A at 6-7.

### 4. The Settlement Was Negotiated at Arm's-Length by Experienced Counsel

A strong presumption of fairness applies to settlements that have been negotiated at arm's-length by experienced counsel and with the assistance of an independent mediator. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *In re MRV Commc'ns*, 2013 WL 2897874, at *2 ("'The involvement of experienced [] counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery ha[s] taken place create a presumption that the agreement is fair.'"); *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000) (Where "the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex . . . litigation, the Settlement will enjoy a presumption of fairness.").

The Settlement here was reached after extensive arm's-length negotiations between counsel for the Parties. The negotiations included Plaintiffs sending Defendants a detailed set of settlement demands and counter-demands, and an in person mediation session as well as continued assistance from Judge Phillips, a well-respected mediator who is well versed in the field of complex litigation, especially shareholder derivative litigation. This factor thus weighs in favor of approval of the proposed Settlement. *See In re Atmel*, 2010 WL 9525643, at *13 (noting that "Judge Phillips' participation weighs considerably against any

16

inference of a collusive settlement.").

All counsel possessed a firm understanding of the strengths and weaknesses of their respective claims and defenses.  The Settling Parties and their respective counsel believe that that the proposed Settlement before the Court represents a fair, reasonable, beneficial, and practical resolution of highly uncertain litigation, and that its terms fairly account for the risks and potential rewards of the claims being settled.   Scolnick Decl. Ex. A at 6-8.   As the Ninth Circuit has recognized, significant weight should be attributed to the parties' belief that the litigation should be settled on the proposed terms, since "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *In re Pac. Enter.*, 47 F.3d at 378; *see also In re First Capital Holdings Corp. Fin. Prod. Sec. Litig.*, MDL No. 901, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement).

### 5.   Current OSI Shareholders Overwhelmingly Favor Final Approval of the Settlement

The Settlement's fairness is further demonstrated by the fact that OSI shareholders overwhelmingly support the approval of the Settlement.  *See In re Apple Computer, Inc. Deriv. Litig.*, No. C 06-4128 JF (HRL), 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) (a "factor to consider in evaluating a proposed derivative settlement is shareholder opposition").  On January 24, 2017, this Court entered the Preliminary Approval Order.  ECF No. 93.  Pursuant to the terms of the Preliminary Approval Order, OSI published a copy of the Notice in the national edition of *Investor's Business Daily* on February 6 and February 13, 2017, posted the Notice and the settlement terms on OSI's Investor Relations website, and

included a statement in its 10-Q filed with the SEC on February 1, 2017. Plaintiffs' Counsel also posted the Settlement and Notice on their websites.

Pursuant to the Preliminary Approval Order, the Notice directed that any objections to the Settlement be filed by April 17, 2017. To date, Plaintiffs' Counsel have not received notice of a single objection to the Settlement or to the Fee and Expense Award. "The reaction of the class to the proffered settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990); *see also 7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1153 (2000) (positive reaction from class members favors approval). Even a small number of objections in the face of overwhelming support is convincing evidence of a proposed settlement's fairness and adequacy. *See, e.g., Rome v. Archer*, 197 A.2d 49, 58 (Del. 1964) (approving settlement agreement that was ratified by a large majority of shareholders); *see also Ryan v. Gifford*, C.A. No. 2213-CC, 2009 Del. Ch. LEXIS 1, at *32 (Del. Ch. Jan. 2, 2009) (the presence of only one objector to a proposed settlement lent "support to plaintiffs' argument that the Settlement is fair, reasonable, and adequate). Where, as here, there is no objection, approval of settlement "would be almost perfunctory." *Chiulli v. Hardwicke Co.*, 1985 WL 11532, at *1 (Del. Ch. Feb. 11, 1985).

## C. The Negotiated Amount of Attorneys' Fees and Expenses Should be Approved

After the terms of the Settlement were reached, the Settling Parties attempted to resolve the issue of the appropriate amount of attorneys' fees and expenses that should be awarded to Plaintiffs' Counsel based on the substantial benefits conferred. Those negotiations were conducted through Judge Phillips' office. After those discussions proved unsuccessful, the parties consented to

18

submit the question of the amount of the Fees and Expense Award that OSI should pay for binding determination by Judge Phillips.   After receiving written submissions and hearing oral argument from the Settling Parties, Judge Phillips determined that Defendants should pay Plaintiffs' Counsel $1.6 million. Accordingly, Defendants have agreed to, and do not oppose Plaintiffs' Counsels' request to this Court for, a Fees and Expense Award in the amount of $1.6 million. The U.S. Supreme Court has encouraged this type of resolution of attorneys' fees, stating that "[a] request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

The attorneys' fees here were negotiated at arm's-length and should be approved by the Court.   Courts in the Ninth Circuit routinely approve attorneys' fees in derivative settlements when the fees are negotiated separately and at arm's-length.   *See, e.g.*, *Wehlage v. Evergreen at Arvin LLC*, No. 4:10-cv-05839-CW, 2012 WL 4755371 (N.D. Cal. Oct. 4, 2012) (approving fee amount that was negotiated at arm's-length with defendants); *In re Apple Computer*, 2008 WL 4820784, at *3 (approving attorneys' fee that was negotiated separately and finding that "a court should refrain from substituting its own value for a properly bargained-for agreement").

The Fees and Expense Award requested is also reasonable.   The Ninth Circuit has enumerated several factors to consider when determining the reasonableness of attorneys' fees, including: (1) the results achieved; (2) the risks of the litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee; (5) the burdens carried by plaintiffs' counsel; and (6) the awards made in similar cases. *In re MRV Commc'ns,* 2013 WL 2897874, at *6.

The Supreme Court has stated that "'the most critical factor' in determining

19

the reasonableness of a fee award 'is the degree of success obtained.'" *Klein v. City of Laguna Beach*, 810 F.3d 693, 698-99 (9th Cir. 2016) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). Where, as here, the corporation benefits as a result of counsel's efforts in securing significant corporate governance reforms, counsel is entitled to an award of attorneys' fees and expenses. *See, e.g., In re Rambus*, 2009 WL 166689, at **3-4 (explaining that "courts consistently have approved attorneys' fees and expenses in shareholder actions where the plaintiffs' efforts resulted in significant corporate governance reforms. . . ." and awarding $2 million fee where "the corporate governance reforms [we]re of significant value to [the company]"). *In re NVIDIA,* 2008 WL 5382544, at *3; *In re Hewlett-Packard,* 2015 WL 1153864, at *5. As such, corporate governance reforms have formed the basis of many other derivative settlements, and expert studies demonstrate that such changes increase the market value of a company.[5] As the Supreme Court has explained, "an increasing number of lower courts have acknowledged that a corporation may receive a 'substantial benefit' from a [stockholders' action], justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature." *Mills*, 396 U.S. at 395.

Here, the corporate governance changes resulting from the Settlement confer substantial benefits to OSI. The Settlement effects critical corporate governance reforms tailored to address OSI's loss government contracts costing OSI millions

---

[5]     *See, e.g.*, Paul A. Gompers, *Corporate Governance and Equity Prices*, Q.J. ECON. 118(1), at 107-155 (2003) (finding that firms with stronger governance traded at a "corporate governance premium" and had higher firm value, higher profits, higher sales growth, and lower capital expenditures); ); McKinsey & Company, G*lobal Investor Opinion Survey on Corporate Governance* (2002) (finding that 75% of institutional investors responded to a survey stating that board practices are at least as important to them as financial performance and 80% responding that they would pay more for a company with good governance than bad governance);McKinsey & Company, *Putting a Value on Board Governance*, (1996) (concluding that institutional investors were willing to pay an average of 11% more for well governed companies).

of dollars.  The Settlement requires, among other things, the appointment of an additional independent director, the naming of a lead independent director, and reforms tailored to ensure compliance with government procurement policies (a risk area OSI acknowledges), and to restore Board/management accountability.  As acknowledged by Defendants, the Governance Measures in this case were achieved as a result of the efforts of Plaintiffs' Counsel, and provide substantial benefits to OSI and its shareholders.  *See supra* §§II.D and III.B.1.

The fee award also satisfies the other factors that courts in the Ninth Circuit look to in determining whether a fee award is reasonable.  Indeed, pursuing this litigation was inherently risky, as "derivative lawsuits are rarely successful."  *In re Pac. Enter.* 47 F.3d at 378.  In addition, the skill required by Counsel to prosecute and settle the action supports the requested fee award, as Plaintiffs' Counsel are made up of law firms that specialize in stockholder litigation and provided extensive, high-quality representation throughout the pendency of the actions.  Plaintiffs' Counsel also undertook this litigation on a fully contingent basis with the expectation that they would have to devote many hours of hard work to the prosecution of a case involving complex factual and legal issues without any guarantee of successful resolution or of compensation for their efforts.  The prosecution of the actions involved the expenditure of significant resources, including time spent by attorneys and staff, as well as hard expenses incurred during the litigation, for which Plaintiffs' counsel received no compensation during the course of litigation.  Accordingly, the contingent nature of the representation and the burdens taken on by Plaintiffs' counsel fully support the requested fee award.  *See, In re MRV,* 2013 WL 2897874, at *6 ("the fifth factor is clearly satisfied here as well, as '[t]he litigation was undertaken by Plaintiffs' Counsel on a wholly contingent basis' with the understanding that they were embarking on a

PLAINTIFFS' UNOPPOSED NTC OF MOT. AND MOT. FOR FINAL APPROVAL;
MEMORANDUM IN SUPPORT THEREOF
Lead Case No.  2:14-CV-2910-MWF (MRWx)

complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the investment of time and money the case required.")

In light of the extensive corporate governance changes achieved here, the substantial risks involved, and the contingent nature of the representation, the $1.6 million Fees and Expense Award is reasonable.  In addition, the amount requested is reasonable when compared with fees awarded in other derivative settlements:

- In *County of York Employees Retirement Plan and Lynne Schwartz v. Jung*, Index No. 651304/2010 (N.Y. Sup., N.Y. Cty.), the court awarded a $4 million fee in a derivative case concerning Avon Products, Inc.'s alleged non-compliance with the Foreign Corrupt Practices Act and its alleged lack of adequate internal controls. Settlement was reached while the motion to dismiss was pending. During settlement negotiations, Avon also reached an agreement with the SEC and the DOJ on the underlying charges resulting in a $135 million fine.  The settlement resulted in Avon implementing a global ethics and compliance regime for four years.

- In *Unite Nat'l Ret. Fund v. Watts*, No. 04CV3603 (DMC), 2005 WL 2877899 (D.N.J. Oct. 27, 2005), the court awarded $9.2 million in a derivative case involving where no motion to dismiss was filed.  This case involved Shell's recategorization of oil reserves.  The settlement resulted in the adoption of corporate governance principles including structure, audit, compensation, and limitations such that the CEO and other senior management had no more than one non-executive directorship in a FTSE 100 company.  The CEO and CFO were also charged with, among other things, ensuring that the company's accounting practices comply with International Reporting Standards and that the company employ an outside consultant for at least five years.

- In *Warner v. Lesar*, No. 2011-09567 (Tex. Dist., Harris Cty. Oct. 1, 2012), the court awarded $7.75 million against Halliburton in a derivative case involving an environmental disaster following the Deepwater Horizon explosion.  The parties settled following the company's refusal to pursue litigation.  The achieved changes included improvements to corporate governance guidelines to promote the protection of health, safety and the environment, and the retention of an independent risk expert.

- In *In re DaVita Healthcare Partners, Inc. Deriv. Litig.*, Nos. 12-cv-2074-WJM-CBS, 13-cv-1308-WJM-CBS (D. Colo. 2015), the court awarded $6.1 million in a case involving false Medicare billing and the False Claims Act.  The corporate governance enhancements included increased oversight of Medicare billing.  The settlement was achieved after the defendants had filed their motion to dismiss.

22

- In *In re Johnson & Johnson Deriv. Litig.*, Nos. 10-2033 (FLW), 11-4993, 11-2511 (FLW) (D.N.J. 2013), the court awarded $5.3 million in a derivative case involving the company's off label marketing, kickbacks, and product recalls. The settlement was reached after the motion to dismiss was granted and prior to the filing of an amended complaint. The settlement achieved corporate governance enhancements such as the adoption of management level systems and procedures designed to ensure early detection and remediation of all product related issues.

- In *Plymouth County Contributory Ret. Sys. v. Hassan*, No. 08-1022 (DMC) (JAD), 2012 WL 664827 (D.N.J. Feb. 28, 2012), the court awarded $5.1 million in fees against Merck in a derivative action involving the failure of the drug Vytorin. Settlement was achieved following filing of the motion to dismiss. The settlement achieved corporate governance enhancements including a report from Merck Research Labs to the Research Committee of the Board concerning any covered clinical trial with delayed results, the reasons for such delay, and the results of any corrective action taken.

- In *Lambrecht, v. Taurel*, No. 1:08-cv-68-WTL-TAB, 2010 WL 2985943 (S.D. Ind. July 27, 2010), the court awarded $8.75 million in fees. The case involved Eli Lilly's alleged improper marketing of certain drugs and improper rebates. No motion to dismiss had been filed. The settlement achieved corporate governance enhancements including changes to the company's corporate governance, compliance, and risk management systems. Eli Lilly was required to adopt a Product Safety and Medical Risk Management Core objective, as well as policies and procedures to support scientific excellence in the development and communication of product safety and effectiveness information. Amendments were made to the company's Science & Technology Committee Charter regarding reporting to the Board on the safety and effectiveness of products. The changes also included enhanced oversight by the Public Policy and Compliance Committee in areas of non-financial compliance and non-financial enterprise risk management and operational audit.

- In *Rubery v. Kleinfeld*, No. 2:12-cv-00844-DWA (W.D. Pa. 2014), the court awarded $3.75 million in fees in a derivative case involving the Foreign Corrupt Practices Act. Neither a motion to dismiss nor an answer had been filed when the case settled. The settlement achieved corporate governance and compliance reforms including the creation of a Chief Ethics and Compliance Officer position, mandatory due diligence on foreign intermediaries, and updates to the company's policies on meals and entertainment.

The Settlement in this case provides shareholders with similar or even better results than those achieved in the settlements described above.

Additionally, a "lodestar cross-check" also supports the reasonableness of

23

the Fees and Expense Award. *Roberti v. OSI Systems Inc.,* No. 2:13-cv-09174-MWF-MRWx, 2015 WL 8329916, at *7 (C.D. Cal. 2013) ("reasonableness of [fee award] is confirmed by a cross-check with a lodestar comparison"). The "lodestar" is produced by multiplying the number of hours expended by counsel's hourly rate. *Id.*, at *6. Here, Plaintiffs' Counsel's lodestar is in excess of $2.75 million as of November 9, 2016 when the Settling Parties submitted the attorneys' fees issue to binding arbitration before Judge Phillips ($2,240,440 in costs and fees for California Counsel and $505,000.00 in costs and fees for Delaware Counsel). The costs and fees associated with Plaintiffs' Preliminary and Final Approval Motions have not been included in this calculation. In the Ninth Circuit, lodestar multipliers can range from two to four times, or even higher. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming fee award equal to lodestar multiplier of 3.65 and listing 23 settlements and multipliers for each, where the average multiplier is 3.28).[6]

### D. The Requested Service Awards for Plaintiffs Are Reasonable and Appropriate

The Stipulation provides that Plaintiffs' Counsel will apply for an service award for Plaintiffs in an amount not to exceed $5,000 each, to be paid from the Attorneys' Fees and Expenses awarded by the Court. Scolnick Decl. Ex. A, §5.10. Notably, "[a]n incentive payment to come from the attorneys' fees awarded to plaintiff's counsel need not be subject to intensive scrutiny, as the interests of the

---

[6]     *See also In re DaVita Healthcare Partners, Inc., Deriv. Litig.*, No. 12-cv-2074-WJM-CBS, 2015 WL 3582265 (D. Colo. June 5, 2015) ($6.1 million attorneys' fees award with 3.0 lodestar multiplier in a derivative suit that settled for corporate governance reforms); *In re Cadence Design Systems, Inc. Sec. & Deriv. Litig.*, No. C-008-49661 SC, 2012 WL 1414092, at *5 (N.D. Cal. Apr. 23, 2012) (approving fee equal to 2.88 lodestar multiplier); *Buccallato v. AT&T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (approving 4.3 lodestar multiplier and listing cases approving multipliers ranging from 4.3 to 9.3).

24

corporation, the public, and the defendants are not directly affected." *In re Cendant Corp., Deriv. Action Litig.*, 232 F. Supp. 2d 327, 344 (D.N.J. 2002).

Here, the Plaintiffs vigorously participated in the litigation and willingly undertook the responsibilities and risks attendant with bringing these derivative actions. In doing so, Plaintiffs devoted many hours to litigation-related activities. Plaintiffs diligently participated in the prosecution of this action for more than three years by, among other things, reviewing and discussing with counsel the Verified Complaints, the motion to dismiss briefing, Settlement-related documents, the Preliminary Approval Order, as well as numerous other consultations and conferences with Plaintiffs' Counsel. As a result, Plaintiffs and Plaintiffs' Counsel respectfully request that the Court grant the requested $5,000 service awards to each Plaintiff.

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement, including the Fees and Expense Award.

DATED:  April 10, 2017            Respectfully submitted,
                                 SCOTT+SCOTT, ATTORNEYS AT LAW, LLP


                                 */s/* John T. Jasnoch
                                 John T. Jasnoch (281605)
                                 jjasnoch@scott-scott.com
                                 655 North Central Ave., 17th Floor
                                 Glendale, CA  92103
                                 Telephone: (213) 985-1274
                                 Facsimile:  (213) 985-1278

1                             SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

2                             Judith Scolnick (*pro hac vice*)

3                             Thomas Laughlin (*pro hac vice*)

                              The Helmsley Building

4                             230 Park Avenue, 17th Floor

5                             New York, NY  10169

                              Telephone: (212) 223-6444

6                             Facsimile:  (212) 223-6334

7                             BOTTINI & BOTTINI, INC.

                              Francis A. Bottini Jr. (175783)

8                             fbottini@bottinilaw.com

9                             Yury A. Kolesnikov (271173)

                              ykolesnikov@bottinilaw.com

10                            7817 Ivanhoe Avenue, Suite 102

                              La Jolla, CA 92037

11                            Telephone:  (858) 914-2001

12                            Facsimile:   (858) 914-2002

13                            THE SHUMAN LAW FIRM

14                            Kip B. Shuman (145842)

                              kip@shumanlawfirm.com

15                            Rusty E. Glenn

16                            rusty@shumanlawfirm.com

                              One Montgomery St., Suite 1800

17                            San Francisco, CA 94104

18                            Telephone:  (303) 861-3003

                              Facsimile:   (303) 536-7849

19

20                            *Co-Lead Counsel for Plaintiffs*

21

22

23

24

25

26

27
                                   26

28